UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| PAMELA L. DUMAS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:05-CV-0174-C |
| | § | ECF |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Pamela L. Dumas seeks judicial review of a decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the court affirm the Commissioner's decision.

## I.    Facts

Prior to filing her application for DIB, Dumas worked as a service representative for Southwestern Bell Telephone. (Tr. 94, 105.) In her application for DIB she alleged that a number of illnesses including carpal tunnel syndrome, depression, Post Traumatic Stress Disorder (PTSD), rheumatoid arthritis, fibromyalgia, and asthma limited her ability to work.

(Tr. 94.)  According to her testimony and the administrative record, Dumas stopped working in March 2000 when Southwestern Bell Telephone placed her on long-term disability, and she applied for benefits on December 26, 2002, because it was required under Southwestern Bell Telephone's long-term disability insurance policy.   (Tr. 28, 33, 102.) The Administrative Law Judge (ALJ) determined that Dumas had a number of severe impairments.  (Tr. 11.)  He also determined that there was an increase in symptoms caused by and related to her fibromyalgia and that she was disabled as of November 1, 2003. (Tr. 19.)   The ALJ therefore rejected Dumas's alleged onset date of disability of March 4, 2000.

In this appeal Dumas contends that the ALJ erred in analyzing her mental impairment and that he was required to call a medical advisor to determine the onset date of her disability and that his failure to do so deprived her of potential past due benefits.

## II.   The ALJ's Evaluation of Dumas's Mental Impairments

Dumas specifically argues (1) that the ALJ did not comply with the provisions of 20 C.F.R. § 404.1520a, the technique set forth in the regulations for evaluating mental impairments; (2) that he did not evaluate all the medical evidence; and (3) that he rejected without justification an opinion from her treating psychiatrist which provided evidence that her mental impairment met the criteria of Listing 12.04.

Dumas's first argument must be rejected.   The ALJ evaluated Dumas's mental impairments under the steps set forth under § 404.1520a.  He determined that Dumas had medically determinable mental impairments, including depression, PTSD, and psychosis not

otherwise specified, which he found to be severe impairments, and that she suffered from bulimia nervosa, which he found was not a severe impairment. (Tr. 11, 15.) Discussing the medical evidence he determined that her mental impairments did not meet the criteria of a listed impairment and assessed the degree of limitation caused by her impairments under the functional categories set forth under the regulations. (Tr. 15.) Finally, he evaluated the impact her mental impairments had upon her residual functional capacity and found that she was limited to jobs that would not require contact with the public and that could be performed by an individual with less than a moderate concentration deficit. (Tr. 16-17.) The ALJ's evaluation demonstrates that he complied fully with the requirements set forth in the regulations. *See* 20 C.F.R. § 404.1520a (b)-(e).

Dumas's second argument does not require remand. Dumas argues that the ALJ ignored examination notes from Boris Porto, M.D., a psychiatrist who evaluated and treated her psychiatric condition on September 22, 2004, and on October 7, 2004, and Arun Patel, M.D., a psychiatrist designated by the Texas Rehabilitation Commission to review her psychiatric condition. (Tr. 147-50, 363-69.) As an initial point, there is no requirement that the ALJ discuss every piece of medical evidence in the record. It should also be noted that the ALJ determined that Dumas's disability began almost one year before Dr. Porto examined her. Thus, even if the court were to assume that Dr. Porto's examination notes provide evidence that Dumas's mental impairments were disabling at the time he examined her, she was already entitled to benefits at that time and therefore the evidence was immaterial to the ALJ's decision. Finally, nothing in Dr. Porto's examination notes conflict

3

with the ALJ's residual functional capacity determination or his ultimate decision.

Likewise, nothing in Dr. Patel's examination notes conflicts with or diminishes the ALJ's decision.  Dr. Patel's diagnoses were acknowledged by the ALJ and the mental limitations he included in his residual functional capacity determination are consistent with Dr. Patel's findings.  Dr. Patel determined that Dumas suffered from recurrent and severe major depression with psychotic symptoms and PTSD, diagnoses that were also made by Dumas's treating physician and acknowledged by the ALJ.  (Tr. 11, 15, 180-87.)  Although Dr. Patel assigned Dumas a Global Assessment of Functioning (GAF) rating of 50, which would indicate serious symptoms that might impair occupational functioning,[1] nothing in the objective findings from his examination indicates that Dumas would be disabled from all work because of her mental impairments.  (Tr.  147-50.)

Among Dr. Patel's findings were that Dumas's thoughts were not psychotic, that her thought process was organized, and that there was no evidence of delusions, ideas of reference, or current perceptual disturbances.  (Tr. 148.)  He reported that her mood was moderately depressed and anxious.  *Id.*  He found that her affect was blunted but that she was oriented to time, place, and person; that her fund of general knowledge was average; that her insight and judgment were adequate; that her memory and concentration were intact; and that she was able to think abstractly.  (Tr. 149.)  The ALJ's determination that Dumas was limited

---

[1]

A GAF score of 50 indicates that the patient would be expected to exhibit "any serious impairment in social, occupational, or school functioning."  AMERICAN  PSYCHIATRIC  ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. 2000) (DSM-IV).

to work that would not require contact with the public and that could be performed by an individual with less than a moderate concentration deficit adequately addresses the limitations Dr. Patel found.

Dumas's final argument that the ALJ erred in discounting an opinion offered by her treating physician does not require remand. According to the records Dumas provided the Social Security Administration, Mahendra Upadhyaya, M.D., provided medication management for Dumas's psychiatric conditions from early 2002 until September 2003. (Tr. 179-89, 317-21.) On December 29, 2003, which was after the date on which the ALJ determined that Dumas's disability began, Dr. Upadhyaya completed a form that, if accepted by the ALJ, would have required a finding that her mental impairments met the criteria of a listed impairment.[2] (Tr. 317-19.) *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04.

The ALJ acknowledged Dr. Upadhyaya's report but found that the opinions in the report were inconsistent with the physician's own treatment notes and were not supported by the other clinical evidence in the record. (Tr. 15.) The ALJ was correct. For example, although Dr. Upadhyaya indicated in the report that Dumas had suffered three episodes of decompensation in a one-year period, there is no evidence of this in his own treatment

---

[2]

A claimant can show that he meets the criteria of Listing 12.04 by showing under the "A" and "B" criteria of the listing that he has either a depressive syndrome, manic syndrome, or bipolar syndrome which results in at least two of the following: a marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation of extended duration. *Id*. In the alternative, he may demonstrate under the "C" criteria that he meets the listing by showing a medically documented history of a chronic affective disorder that has caused more than a minimal limitation of ability to do basic work activities and one of the following: (1) repeated episodes of decompensation; (2) evidence that a residual disease process is such that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate; or (3) a history of one or more years of an inability to function outside a highly supportive living arrangement and an indication of a continued need of such an arrangement. *Id*.

notes or anywhere else in the record.   (Tr. 317-18; *see* Tr. 179-89.)   The ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000).   Thus, when substantial evidence supports a finding that a claimant can perform work, an ALJ may reject a treating physician's opinion that is contrary to such evidence.   *See Spellman v. Shalala*, 1 F.3d 357, 365 (5th Cir. 1993) (declining to find error where evidence in the record contradicted the opinion of the claimant's treating physician).

## III.   The ALJ's Determination of Dumas's Onset Date of Disability

The onset date of disability is the first day an individual is "disabled" as that term is defined in the Social Security Act and regulations.   1983 WL 31249, S.S.R. 83-20 at * 1. In many claims the onset date of disability is critical because it may affect the period for which the claimant is paid benefits; therefore, the onset date must be correctly established and supported by evidence.   *Id*.   The starting point for determining a claimant's onset date of disability is his allegation as to when his disability began but the allegation must be consistent with the medical evidence; the medical evidence serves as the primary factor in determining the onset date.   *Id*. at *2; *see Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990).   Therefore, the claimant's alleged onset date may be rejected when reasons are articulated for rejecting the allegation and when the reasons articulated are supported by substantial evidence.   *Ivy*, 898 F.2d at 1048.

In addition to articulating reasons for rejecting a claimant's alleged onset date, Ruling

83-20 directs that in certain situations the ALJ must seek the opinion of a medical advisor. *Id*. at 3.  Specifically, Ruling 83-20 requires that in cases in which the claimant's disability arises from a slowly progressive impairment, the ALJ must consult a medical advisor when precise medical evidence is not available and the onset date must be inferred from what evidence is available.  *Id*. at *3.  The Commissioner concedes that Dumas had slowly progressive impairments.  However, the presence of a slowly progressive impairment does not, in every case, require the ALJ to call upon the services of a medical advisor.

 In *Spellman*, the Fifth Circuit Court of Appeals analyzed this portion of Ruling 83-20 and held that a medical advisor must be consulted when (1) the case involves slowly progressive impairments; (2) the medical evidence regarding the onset date is ambiguous; and (3) the onset date of disability must be inferred from the evidence.  *Spellman*, 1 F.3d at 362.  The court made clear that consultation with a medical advisor is required only when the medical evidence is ambiguous as to the disability onset date.  *See id*. and *id*. at 363.  The ALJ in this case was not faced with such a situation.  The medical evidence in this case was not ambiguous; in fact, unlike the situation in *Spellman*, there was a legitimate medical basis on which the ALJ could make an informed judgment regarding Dumas's onset date of disability. *Compare Spellman*, 1 F.3d at 363.

Dumas began treatment under Jitendra Vasandani, M.D., on October 11, 2001, for various complaints and symptoms including reports of a positive rheumatoid factor, weakness in her hands and feet, and pain in her major joints.  (Tr. 217.)  Dr. Vasandani's impression was that Dumas's symptoms suggested that she suffered from fibromyalgia.

(Tr. 218.)   In addition, although the rheumatoid factor was negative, an x-ray indicated osteopenia in Dumas's hands and wrists that was suggestive of seronegative rheumatoid arthritis.[3]  (Tr. 203, 222.)   One month later, Dr. Vasandani prescribed medication indicated for the treatment of rheumatoid arthritis, pain medication as needed, and advised Dumas to continue taking anti-depressants which he believed would benefit her fibromyalgia. (Tr. 203-04.)

The following February in 2002, Dr. Vasandani examined Dumas and noted that she reported diffuse pain and some swelling in the small joints of her hands and wrists along with stiffness in the mornings that lasted a couple of hours.  (Tr. 202.)  Dr. Vasandani noted that there was mild synovial thickening in some joints but no frank synovitis, deformities, nodules, tophi, effusion, warmth, or swelling, and that range of motion was well preserved. (Tr. 202.)  In May 2002 Dr. Vasandani's findings were unchanged. He noted that Dumas's arthritis was stable and recommended a follow-up examination in three months.  (Tr. 201.) He continued treating her symptoms with medication and noted that Dumas took pain medication on an as needed rather than regular basis.  *Id*.  Again in July 2002, Dr. Vasandani noted that Dumas's arthritis was stable with medication and that she took pain medication on an as needed basis.  (Tr. 198.)

In October 2002 Dr. Vasandani noted that Dumas had significant complaints of diffuse arthralgias and myalgias but believed that her rheumatoid arthritis was stable and that

---

[3]

A diagnosis of seronegative rheumatoid arthritis indicates that the patient has rheumatoid arthritis without evidence of the rheumatoid factor.  *See* STEDMAN'S MEDICAL DICTIONARY 1623  (27th ed. 2000).

her complaints were due to fibromyalgia syndrome. (Tr. 195.) After Dumas complained that the generic Darvocet was not helping her pain as much as the brand name, Dr. Vasandani cancelled her prescription for generic Darvocet and ordered a new prescription. *Id.* Dr. Vasandani did not examine Dumas again until February 2003. At that time Dumas reported that other than bilateral hip pain, her other joints were doing fine and that she had not experienced any major flare-ups. (Tr. 192.) Dr. Vasandani again determined that range of motion in Dumas's joints was well preserved, that there were no signs of inflammation or deformity, and that her rheumatoid arthritis was stable. *Id.*

Dumas's condition remained stable through July 2003 at which time Dr. Vasandani noted that Dumas had some pain from bursitis in her left hip, some arthralgias in her wrists, elbow, and knees, but no swelling in any of her joints. (Tr. 189.) He also noted that she tolerated her medications well and that he considered treating the bursitis in her left hip with an injection of medication but that Dumas declined the treatment at that time. (Tr. 189.) The next record from Dr. Vasandani, which can be characterized as a residual functional capacity evaluation form, was completed on November 2, 2003. (Tr. 297-98.) Dr. Vasandani's notations on the evaluation form indicate that he believed Dumas was incapable of performing the requirements of sedentary work. *Id.*

As the ALJ found, the evaluation form dated November 2, 2003, provides the first indication that Dumas's arthritis was disabling. The evidence prior to this date demonstrates that there were no physical signs of debilitating arthritis, that Dumas's condition was stable and responsive to medication, and that her pain was not constant and unremitting. (Tr. 189,

9

192, 198, 201-02.) *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (Pain is not disabling pain unless it is constant, unremitting, and wholly unresponsive to therapeutic treatment.)

The ALJ's determination that Dumas's disability did not begin until November 1, 2003, is supported by substantial evidence. Further, the medical evidence in Dumas's case is not ambiguous with regard to the onset of her disability; therefore, the ALJ was not required to consult with a medical advisor. *Spellman*, 1 F.3d 363-64. The claimant bears the burden of showing that he is unable to work because of his impairment. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Dumas met this burden by producing evidence from Dr. Vasandani. The ALJ recognized the evidence and accorded it controlling weight. There was no error.

## IV.   <u>Conclusion</u>

Based on (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) Dumas's subjective evidence of pain and disability; and (4) Dumas's age, education, and work history, the decision of the ALJ that she was not disabled prior to November 1, 2003, is supported by substantial evidence. *See Martinez, v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (setting forth the factors relevant to the court's substantial evidence review).

## V.   <u>Recommendation</u>

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and

dismiss Dumas's appeal.

**VI.**     <u>**Right to Object**</u>

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court.  A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   April 26, 2006.

NANCY M. KOENIG
United States Magistrate Judge

11